AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
## for the
## District of Arizona

X FILED ___ LODGED
___ RECEIVED ___ COPY
NOV 3 0 2020
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY NM         DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>Black Samsung Galaxy S10 5G,<br>no visible identifiable numbers. | Case No. 20-1498MB |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ___12/14/2020___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 11/30/2020 at 1:13pm   _____
                                              *Judge's signature*

City and state: <u>Yuma, Arizona</u>       Honorable <u>James F. Metcalf, U.S. Magistrate Judge</u>
                                              *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Samsung Galaxy S10 5G (hereafter the "SUBJECT CELLULAR TELEPHONE"), the serial number or any other identifiable numbers on the cellular telephone are unknown due to the SUBJECT CELLULAR TELEPHONE having a pattern password not known to Agents. The SUBJECT CELLULAR TELEPHONE is currently stored at the Yuma Homeland Security Investigations (HSI) office located at 7431 E. 30th Street, Yuma, Arizona 85365.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. §§ 841(a)(1) & 21 U.S.C. § 952, 960 (a)(1) and (b)(1)(H), including:

    a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

    c. all bank records, checks, credit card bills, account information, or other financial records;

    d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    e. any information recording schedule or travel;

    f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications;

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>Black Samsung Galaxy S10 5G,<br>no visible identifiable numbers. | Case No. 20-1498 MB<br><br>(Filed Under Seal) |

FILED ___ LODGED
___ RECEIVED ___ COPY

NOV 30 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY NM _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 952 | Importation of a Controlled Substance |

The application is based on these facts:

**See attached Affidavit of Special Agent Antonio Tafoya**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Brandon M. Brown

ANTONIO TAFOYA  Digitally signed by ANTONIO TAFOYA
Date: 2020.11.27 14:11:16 -07'00'
*Applicant's Signature*

Antonio Tafoya / HSI / Special Agent
*Printed name and title*

Sworn to before me ~~and signed in my presence.~~ telephonically

Date: 11/30/2020

City and state: Yuma, Arizona

*Judge's signature*

Honorable James F. Metcalf, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Samsung Galaxy S10 5G (hereafter the "SUBJECT CELLULAR TELEPHONE"), the serial number or any other identifiable numbers on the cellular telephone are unknown due to the SUBJECT CELLULAR TELEPHONE having a pattern password not known to Agents. The SUBJECT CELLULAR TELEPHONE is currently stored at the Yuma Homeland Security Investigations (HSI) office located at 7431 E. 30th Street, Yuma, Arizona 85365.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. §§ 841(a)(1) & 21 U.S.C. § 952, 960 (a)(1) and (b)(1)(H), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications;

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Antonio Tafoya, being first duly sworn, hereby deposes and states as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2. I am a Special Agent with Homeland Security Investigations (HSI) and have been since April 2017. Your Affiant's responsibilities include the investigation of violations of federal laws, including drug offenses. Prior to becoming a Special Agent for HSI Yuma, your Affiant was an Agent with the United States Border Patrol for eleven years, and while employed with the Border Patrol your affiant was assigned as a Task Force Agent with the Drug Enforcement Administration for three years. During this time, your Affiant was assigned to detect, investigate, and enforce laws pertaining to the smuggling of illegal drugs into the United States. Your Affiant has attended and completed the Criminal Investigator Training Program and Homeland Security Investigations Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia.

3. By virtue of my employment as a Special Agent, I have performed various tasks, which include, but are not limited to:

    a. Functioning as a surveillance agent, thus observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

    b. Interviewing confidential sources (CS) and sources of information (SOI) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments);

    c. Functioning as the case agent of the current investigation as well as the case agent and co-case agent of other investigations, which have involved the trafficking of drugs;

    d. Analyzing telephone toll records, pen registers, and other records relating to drug trafficking; and

    e. Served as the affiant of tracking warrants authorizing the tracking of vehicles and cell phones as evidence of drug trafficking and drugs trafficking activities.

4. In the course of conducting drug investigations, I have consulted with other experienced investigators concerning the practices of drug traffickers and the best methods of investigating them. In preparing this affidavit, I have conferred with other Special Agents and law enforcement officers, who share the opinions and conclusions stated herein. Furthermore, I have personal knowledge of the following facts or have learned them from the individual(s) mentioned herein.

5. The statements contained in this Affidavit are based in part on information provided to me by Special Agents of HSI and other law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; and analysis of telephone toll records. I also rely on my experience, training, and background as a Special Agent with HSI in evaluating this information.

6. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either

2

directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; controlled purchases of drugs; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records.

7. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II. BASIS FOR PROBABLE CAUSE

8. On November 18, 2020, at approximately 12:35 a.m., a Hispanic male identified as Santiago Roberto MENDEZ-Zamudio and a Hispanic female identified as Dana VILLAPUDUA-Navarro applied for admission into the United States through the San Luis, Arizona Port of Entry (POE). MENDEZ was the driver and registered owner of a black 2014 Dodge Challenger.

9. MENDEZ presented his United States passport card bearing his photograph and biographical information as his entry document. While in the primary lane Customs and Border Protection Officer (CBPO) F. Salazar questioned MENDEZ as to his purpose in the United States. MENDEZ stated he was going to Yuma, Arizona after visiting some family in Mexico. While conducting his inspection CBPO Salazar obtained a computer-generated alert for the Dodge Challenger. CBPO Salazar obtained a negative customs declaration from MENDEZ. CBPO Salazar then referred MENDEZ, VILLAPUDUA and the vehicle to the secondary inspection area for further inspection. Prior to entering the secondary inspection area MENDEZ drove the Dodge Challenger through the Z-portal (vehicle x-ray) machine.

10. In the vehicle secondary inspection area CBPO S. Barragan encountered MENDEZ and VILLAPUDUA while in the Dodge Challenger. Both MENDEZ and VILLAPUDUA provided legal entry documents to enter the United States. CBPO

3

Barragan asked MENDEZ questions pertaining to his intended destination in the United States and vehicle ownership. MENDEZ stated he was traveling home to Yuma, Arizona and claimed ownership of the Challenger and all contents inside the vehicle. MENDEZ also stated he works at a tire shop located in the Foothills area of Yuma, Arizona. CBPO Barragan also obtained a negative customs declaration and directed both MENDEZ and VILLAPUDUA to prepare the vehicle for inspection. Part of preparing the vehicle for inspection is leaving all personal belongings inside the vehicle. Two cellular phones were left on the dashboard of the Challenger. A black Samsung Galaxy S10 5G cellular telephone (SUBJECT CELLULAR TELEPHONE), was placed on the dashboard above the steering while where MENDEZ was sitting, and a white cellular telephone in a blue case was place on the dashboard in front of the front passenger seat where VILLAPUDUA was sitting. MENDEZ and VILLAPUDUA were instructed to wait in the secondary inspection lobby while the vehicle was inspected.

11. CBPO McMaster was assigned to the Z-portal machine and performed image analysis and observed anomalies in the trunk of the vehicle. CBPO McMaster notified CBPO Barragan of his image findings. CBPO Barragan observed a large speaker box in the trunk. CBPO Barragan attempted to move the speaker box and noticed it was unusually heavy. CBPO Barragan then moved to the backseat area and lowered the back seats to gain access to the trunk and rear of the speaker box. CBPO Barragan was able to remove the rear cover of the speaker box and discovered cellophane packages. CBPO Barragan then requested assistance from Canine Enforcement Officer (CEO) Michel and his canine partner. CEO Michel, using his canine partner conducted a vehicle sniff of the Challenger. CEO Michel advised CBPO Barragan that his canine alerted to the backseat area of the vehicle.

12. A further search of the speaker box revealed a total of 32 packages containing a white crystal-like substance. CBPO Barragan probed a random package and field tested

the crystal-like substance. The substance tested positive for the properties of methamphetamine. The aggregated weight of the 32 packages was 24.05 kilograms. Both MENDEZ and VILLAPUDUA were later released without issue due to the Covid-19 pandemic.

13. The SUBJECT CELLULAR TELEPHONE is currently in the lawful possession of Homeland Security Investigations. Homeland Security Investigations Agents seized the black Samsung Galaxy S10 5G cellular telephone because it was found in the Dodge Challenger on the dashboard above the steering wheel and in front of the driver's seat where MENDEZ was sitting. MENDEZ place the cellular telephone there as part of preparing his vehicle for secondary inspection at the San Luis, Arizona Port of Entry.

14. Based on training and experience, your Affiant knows that drug couriers often use cellular phones to communicate with co-conspirators to coordinate the pick-up and delivery of controlled substances. Your Affiant also knows that international drug trafficking is highly compartmentalized, and that couriers often have limited knowledge of the final destination of drug loads. Directions and final destination locations are often communicated to couriers through other co-conspirators via cellular phone communication while the load is being transported. Given the seizure of approximately 24 kilograms of suspected methamphetamine in the vehicle, there is probable cause to believe there is evidence of drug trafficking on SUBJECT CELLILAR TELEPHONE, including but not limited to communication with co-conspirators and meet locations relevant to drug trafficking.

15. The SUBJECT CELLULAR TELEPHONE is currently stored at the Yuma Homeland Security Investigations (HSI) office located at 7431 E. 30th Street, Yuma, Arizona 85365. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material

5

to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of Homeland Security Investigations.

### III. ITEMS TO BE SEIZED

16. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

17. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

    a. Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking and money laundering activities. Therefore, evidence related to drug trafficking activity and money laundering activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

18. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

### IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

19. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

6

20.     *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

      a.    Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

      b.    Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

      c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little

7

or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

        d.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    21.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

        a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

8

detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

    c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

    d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

  23. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. **CONCLUSION**

24.     Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 952, 960 (Importation of a Controlled Substance) are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

_____
Special Agent Antonio Tafoya
Homeland Security Investigations

Digitally signed by ANTONIO TAFOYA
Date: 2020.11.27 14:11:56 -07'00'

Subscribed and sworn ~~to before me~~ telephonically this 30th day of November 2020.

_____
Honorable James F. Metcalf
United States Magistrate Judge

11